UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TINA Baker<br><br>  Plaintiff,<br><br>v.<br><br>CT TRANSIT<br><br>  Defendant | No. 3:18-cv-01534 (MPS) |

**RULING ON MOTION TO DISMISS**

  Plaintiff, Tina Baker, was terminated from her employment with Connecticut Transit ("CT Transit") and brought this action alleging that CT Transit discriminated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§ 46a-60 *et seq.*; she also asserted a deprivation of rights under Conn. Gen. Stat. § 46a-58. ECF No. 40 ¶ 1. Baker, who was allegedly terminated after she made improper use of her cell phone, alleges that CT Transit treated her "differently" and enforced its personnel policies against her "more harshly" "based on her race and color." *Id.* ¶ 13-14. CT Transit moves to dismiss Baker's Amended Complaint in its entirety. ECF No. 41. For the reasons set forth below, the motion to dismiss is GRANTED in part and DENIED in part. In addition, Baker is required to show cause within 14 days of this ruling why her claim for violation of Section 46a-58 should not be dismissed, because that provision does not create a private right of action.

I.  **FACTUAL ALLEGATIONS**

  The following facts are drawn from the Plaintiffs' Amended Complaint, ECF No. 40, and are accepted as true for the purposes of this ruling. I also consider the exhibit attached to the

Amended Complaint, ECF No. 40 at 7, and the exhibits attached to Defendant's motion to dismiss, ECF No. 42 at 12-19, which are incorporated by reference in the Amended Complaint. *See Yak v. Bank Brussels Lambert, BBL (USA) Holdings Inc.*, 252 F.3d 127, 130 (2d Cir. 2001) ("On a motion to dismiss, the court may consider any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference.").

Baker is "black/African-American," and was working as an employee at CT Transit in Hartford, Connecticut until she was terminated effective February 13, 2017. ECF No. 40 ¶¶ 4, 7. On November 11, 2016, "Baker received a 10[-]day suspension for a first offense alleging improper use of her cell phone." *Id.* ¶ 6. On February 13, 2017, "Baker was terminated for an alleged second improper use of her cell phone." *Id.* ¶ 7. "[O]ther employees, who were not black/African-American employees who committed alleged violations similar to or more serious than that alleged to have been committed by Baker received no or lesser discipline from CT Transit." *Id.* ¶ 10. One such employee, Danny Isabella, "committed a series of offenses including providing free rides, mishandling fares and eating while driving and received two last chance agreements, but is still employed by CT Transit." *Id.* ¶ 10(a). "CT Transit treated Baker differently based on her race and color by enforcing its personnel policies more harshly against her than non-black/African-American employees." *Id.* ¶ 14.

Baker filed a grievance, but when the grievance was "not upheld," she filed a complaint with the State of Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC"). On the EEOC/CHRO form that Baker filled out, she had the option to check boxes applicable to her allegations of discrimination. Baker checked two boxes indicating that she believed that her "race-African American," and "national origin-American" were factors in her termination. ECF No. 42 at 13-

14. Baker did not check the box indicating that "color" was a factor in her termination. *Id.* at 13. Baker checked two boxes for the statutes that she believed CT Transit had violated—Conn. Gen. Stat. § 46a-60(a)(1) and Title VII. In her EEOC/CHRO charge, she alleged that she had been terminated for violating CT Transit's "no-cell phone usage policy" but that her "co-worker, Mary, Last name unknown (Haitian, non-basis [sic])" had been disciplined for violating the same policy, but had not been terminated. *Id.* ¶¶ 6-7. "Mary was less severely disciplined than I was for violating [CT Transit's] no-cell phone policy," stated Baker. *Id.* ¶ 7. "I have been subjected to unfair terms and conditions of employment based on my national origin and race. I was terminated by [CT Transit] based on my race and national origin." *Id.* ¶ 8.

The EEOC/CHRO claims were not decided in Baker's favor. ECF No. 40 ¶ 8. The CHRO issued a release of jurisdiction and the EEOC issued a right-to-sue letter in June 2018. *Id.* ¶ 3. Baker then brought this action.

## II.   PROCEDURAL BACKGROUND

Baker filed her original complaint *pro se* appearing to allege discrimination on the basis of gender, race, and color. ECF No. 1 at 3 ¶ 5. I issued an Initial Review Order in which I determined that Baker had set out a plausible claim of discrimination based upon gender, but had, in her original complaint, failed to include any factual allegations supporting her claims of disparate treatment based upon race or color, and had merely checked the boxes on this Court's form complaint indicating discriminatory conduct based on race and color. ECF No. 8 at 2. I therefore dismissed the portions of Baker's Title VII claim based upon race and color. *Id.* at 3. CT Transit then filed a motion to dismiss the remaining gender discrimination claim, ECF No. 23, which I granted. ECF No. 35. In my order granting the motion to dismiss the gender discrimination claim, I explained that Baker would have an opportunity to file an amended

complaint "pleading race and/or national origin discrimination" and that "it must include facts showing her disparate treatment, for example, by alleging enough facts to show that any coworkers of different races or national origin were similarly situated to her and/or facts providing other indications of her employer's allegedly discriminatory intent." ECF No. 35. Counsel then appeared on behalf of Baker and filed a three-count Amended Complaint, the operative complaint for purposes of this ruling. ECF Nos. 37, 40.

CT Transit argues that Baker's color discrimination claim in Counts One and Two should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because, although Baker alleged race and national origin discrimination in her EEOC/CHRO charge, she failed to allege *color* discrimination, and thus failed to exhaust administrative remedies for color discrimination. ECF No. 42 at 6.  CT Transit also argues that Baker's race and color discrimination claims should be dismissed because Baker failed to allege race and color discrimination in this Court within 90 days of the issuance of the right to sue letter by the EEOC, as required by applicable federal law . *Id.* at 7 (citing 42 U.S.C. Sec. 2000e-5(f)(1) & Conn. Gen. Stat. § 46a-101 (imposing similar 90-day deadline following issuance of release of jurisdiction by CHRO)).  In the alternative, CT Transit urges this Court to dismiss all three Counts under Rule 12(b)(6) for failing to allege sufficient facts to state a plausible claim for relief. *Id.* at 8.

I.     **LEGAL STANDARDS**

I construe CT Transit's motion to dismiss Counts One and Two for failure to exhaust administrative remedies and for failure to comply with the 90-day time limit as a motion to dismiss under 12(b)(6). *See Francis v. New York*, 235 F.3d 763, 768 (2d Cir. 2000) ("[F]ailure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court,

rather than a jurisdictional requirement.") (citations and internal quotation marks omitted); *Payne v. McGettigan's Mgmt. Services, LLC*, 19-CV-1517, 2020 WL 2731996, at *3 (S.D.N.Y. May 26, 2020) ("Failure to exhaust administrative remedies under Title VII is an affirmative defense."); *see also Sharabura v. Taylor*, No. 03-CV-1866, 2003 WL 22170601, at *2 (E.D.N.Y Sept. 16, 2003) (construing a motion to dismiss under 12(b)(1) as motion to dismiss under 12(b)(6) for failure to exhaust administrative remedies). The 90-day limit is likewise an affirmative defense rather than a jurisdictional bar. *Townsend v. Home for the Homeless, Inc.*, 28 Fed Appx. 85, 86 (2d Cir. 2002) ("The plaintiff is correct when she argues that the 90-day time limit [for a Title VII claim] is an affirmative defense that is waived if not pled."). "An affirmative defense is grounds for dismissal [under Rule 12(b)(6)] when it is clear from the face of the complaint and documents integral thereto that plaintiff's claims are barred." *Payne*, 2020 WL 2731996, at * 3.

On a motion to dismiss under 12(b)(6), the Court must determine whether plaintiffs have alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ray v. Watnick*, 688 F. App'x 41, 41 (2d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted)). While the Court must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008), it must grant the moving party's motion if "a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims. . . ." *Scott v. Monroe*, 306 F.Supp.2d 191, 198 (D. Conn. 2004). "Accordingly, 'threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice.'" *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Ashcroft*, 556 U.S. at 678) (brackets omitted).

## II. DISCUSSION

### A. Exhaustion of Administrative Remedies (Counts One and Two)

CT Transit argues that Baker's Title VII and CFEPA claims with respect to color discrimination should be dismissed because her EEOC/CHRO claim failed to allege color discrimination and, therefore, she has not exhausted her administrative remedies and may not pursue a color discrimination claim in federal court. ECF No. 42 at 6.

Before filing a Title VII or CFEPA claim in federal court, a plaintiff must first pursue administrative remedies and file a complaint with the EEOC. *See Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) ("As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC.") (citations omitted), *see also Javier v. Deringer-Ney, Inc.*, 578 F. Supp. 2d 368, 372 (D. Conn. 2008) ("A plaintiff must first pursue available administrative remedies as a precondition to filing a Title VII or CFEPA claim in federal court.") (citation omitted). That requirement need not be met, however, if the claim asserted in federal court "reasonably relates" to the claim that was filed with the agency. *Deravin*, 335 F.3d at 200. "A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Id.* at 200-01. The reasonably related inquiry should focus on the allegations describing the discriminatory conduct. *Id.* at 201.

CT Transit acknowledges that Baker's EEOC/CHRO complaint alleged race and national original discrimination. ECF No. 42 at 6. Baker checked the boxes on the complaint form indicating that she believed that her "Race-African American," and "national origin-American"

6

were factors in her termination. *Id.* at 13-14. Baker also explained on the form that she had been treated unfairly based on her "national origin and race," had been terminated based on her "race and national origin," and provided an example of her Haitian co-worker who had been "less severely disciplined" for violating the no-cell phone policy. *Id.* at 15 ¶¶ 7-8. But CT Transit argues that alleging race and national origin discrimination is different from alleging color discrimination. It contends that Baker's failure to check the "Color" box, and her factual allegations regarding her Haitian co-worker, would not have put the investigating agency on notice of a color discrimination claim and amount to a failure to exhaust administrative remedies, precluding Baker from bringing her claim for discrimination on the basis of color in federal court. ECF No. 45 at 2. Under the unusual circumstances of this case, where the plaintiff's charge at the agency includes factual allegations that effectively disclaim a charge of color discrimination, I agree with CT Transit and dismiss the color discrimination claim.

"[P]recise pleading is not required for Title VII exhaustion purposes," so long as the EEOC "receives notice to investigate discrimination on both [race and color] bases." *Deravin*, 335 F.3d at 202. Some courts have found that color discrimination claims are considered reasonably related to race discrimination claims because they are "of the same type and character such that the defendant cannot claim to be unfairly surprised by the allegation of [color] discrimination." *Clements v. St. Vincent's Hosp. & Medical Center of New York*, 919 F. Supp. 161, 164 (S.D.N.Y. 1996) (citation and quotation marks omitted) (denying defendant's motion to dismiss color discrimination claim because plaintiff raised the issue of color by stating that he had been "discriminated against because of my race (black)," even though he failed to specifically indicate color discrimination in his EEOC charge). In addition, courts have concluded that allegations of discrimination based on national origin, but that do not explicitly

7

allege race or color discrimination, reasonably relate to claims for race and color discrimination. *Se eSharabura*, 2003 WL 22170601, at *3 ("[R]ace and color claims are 'reasonably related' to [plaintiff's] national origin claim….").

But these cases did not involve an administrative complaint like the one here that included factual allegations expressly *contradicting* a particular species of discrimination claim that was later asserted in court. In the only specific instance of discrimination cited in her EEOC/CHRO charge, Baker alleges that she was treated less favorably than "Mary," who was "Haitian" and who was "less severely disciplined" than Baker for violating the same no-cell phone policy. ECF No. 42 at 15 ¶ 7. I presume, because Baker did not specify or indicate otherwise, that Mary is also black.[1] Baker's allegation that someone of the same color (black), but of a different national origin (Haitian), was treated less severely for the same violation would not put the EEOC on notice to investigate a color discrimination claim; indeed, when added to the fact that Baker did not check the "color discrimination" box on the EEOC/CHRO form but did check the "national origin" box (and the "Race – African American" box), her allegation would suggest to the EEOC that she was claiming there had been discrimination in favor of a person of the same color but of a different national origin than she. As noted, the "reasonably related" inquiry focuses on the factual allegations of discrimination, and one could not reasonably expect the EEOC to have investigated color discrimination when the only factual allegation of discriminatory conduct suggested that there was none and that plaintiff was, instead, limiting her claim to other types of discrimination. If Baker had alleged that Mary was not black, that other non-black individuals had been less severely disciplined, or even that Mary

---

[1] According to the Embassy of the Republic of Haiti, 95% of the Haitian population is black, and 5% is mulatto and white. Embassy of the Republic of Haiti, Haiti at a Glance, https://www.haiti.org/haiti-at-a-glance/ (last visited Dec. 1, 2020).

was merely of a different race or national origin – without labeling her with a national origin that made it extremely likely that she shared the plaintiff's color (*see* note 1, *supra*) –, then I would likely reach a different conclusion, based on the case law cited above.  Because I find that Baker not only failed to make a color discrimination claim but effectively disavowed such a claim before the agency, however, I dismiss the claims for color discrimination in Counts One and Two for failure to exhaust administrative remedies, leaving her claims for race discrimination to proceed.

### B. **90-Day Requirement (Counts One and Two)**

Another requirement that must be met to assert a Title VII action in federal court is that the action must be filed within 90 days of the plaintiff's receipt of a right-to-sue letter from the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1).  Similarly, a CFEPA claim must be filed within 90 days of the CHRO's release of jurisdiction. *See* C.G.S.A. 46a-101(e).  CT Transit does not dispute that Baker filed her original *pro se* complaint within 90 days of receiving the right-to-sue letter from the EEOC and the release of jurisdiction from the CHRO.  CT Transit argues, however, that Baker's original *pro se* complaint failed to allege race discrimination and that these "new allegations" in her Amended Complaint should be dismissed because "the original complaint contained no allegations of race and color discrimination." ECF No. 42 at 7.

Baker's allegations of race discrimination are only "new" in that Baker has brought forth in her Amended Complaint specific factual allegations to support her race discrimination claims.  In Baker's original *pro se* complaint, she asserted a claim for race discrimination by checking the box on this Court's form complaint for discriminatory conduct based on "race," among others. (ECF No. 1 at 3.)  Although Baker's *pro se* complaint did not allege specific facts describing discrimination on the basis of race, it did put CT Transit on notice that she was making a claim

of race discrimination. And while I dismissed that claim due to the lack of factual specificity, I permitted Baker to amend her complaint to set forth specific allegations to support a race discrimination claim, following Second Circuit guidance. *Robinson v. Goulet*, 525 Fed App'x 28, 30 (2d Cir. 2013) (pro se complaint should not generally be dismissed "without granting the plaintiff leave to amend" (citations and internal quotation marks omitted)).[2] Baker then filed her Amended Complaint, represented by counsel, alleging race discrimination and asserting factual allegations in support of those claims. ECF No. 40. In other words, CT Transit has been on notice since the case began that Baker was asserting a theory of race discrimination and, as discussed below, Baker has now followed my instructions to add facts to make that theory a plausible one. I decline to dismiss as untimely a claim that merely amplifies a theory Baker has asserted from the outset and was filled out in accordance with my instructions.[3]

## C. Plausible Claim for Employment Discrimination

CT Transit argues that Baker's Amended Complaint should be dismissed because Baker alleges "nothing more than conclusory assertions of differing treatment without providing any basic facts to support the claim." ECF No. 42 at 8. To plead a plausible discrimination claim under Title VII, the plaintiff must allege facts showing that she "[1] is a member of a protected class, [2] was qualified, [3] suffered an adverse employment action, and [4] has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). "The facts required … to be alleged in

---

[2] In my Initial Review Order I determined that Baker had failed to allege facts to support her race discrimination claims. ECF No. 8 at 2. Although I failed to explain in that order that Baker could replead her race and color discrimination claims, I later acknowledged that omission when I dismissed Baker's gender discrimination claim and stated that I "did not make clear that the plaintiff was allowed to replead [race and/or national origin] claims if she could." ECF No. 35.

[3] I need not consider whether Baker's allegations in her Amended Complaint "relate back" to the allegations in her original complaint under Connecticut's relate back doctrine or under Federal Rule of Civil Procedure 15(c). ECF No. 42 at 7. As I have described, Baker's Amended Complaint provides factual allegations to support a theory that she had already asserted in her original *pro se* complaint.

the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Id.* The analysis of a discrimination claim under CFEPA is the same as under Title VII. *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010).

CT Transit does not dispute that Baker belonged to a protected class, was qualified for the position she held, or suffered an adverse employment action. CT Transit's argument turns on whether Baker's Amended Complaint pleads facts showing that Baker's termination occurred under circumstances that give rise to an inference of discrimination on the basis of race. ECF No. 42 at 9.

The factual allegations in Baker's Amended Complaint, accepted as true, "give plausible support to a minimal inference of discriminatory motivation" in her termination. *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). Baker is black/African-American and alleges that "other employees who were not black/African American employees who committed alleged violations similar to or more serious than that alleged to have been committed by Baker received no or lesser discipline from CT Transit." ECF No. 40 ¶¶ 4, 10. Baker describes Danny Isabella as an example of another employee who received less or no discipline after "commit[ing] a series of offenses including providing free rides, mishandling fares and eating while driving"; instead of being terminated, Baker alleges, Isabelle received two "last chance agreements" and is still employed by CT Transit. *Id.* ¶ 10(a). Although Baker does not list the race of Isabella, I infer that Isabella is one of the "not black/African American" employees Baker describes as receiving less or no discipline. My inference is based on the organization of the Amended Complaint. The description of Isabella is set forth in a subparagraph "10(a)" to the

11

main paragraph "10" describing the other "not black/African American" employees. *Id.* As such, Baker's allegation is a specific example of CT Transit's conduct that raises an inference that she was discriminated against on the basis of race and is more than a conclusory assertion or speculation as to why she was treated differently.

CT Transit argues that Baker failed to allege that Isabella – the only specific comparator identified – violated the "same [no-cell phone] policy" that Baker allegedly violated. ECF No. 42 at 8-9. Baker does assert, however, that Isabella "committed a series of offenses including providing free rides, mishandling fares and eating while driving and received two last change agreements, but is still employed by CT Transit." ECF No. 40 ¶ 10(a). Because I must draw all reasonable inferences in Baker's favor on a motion to dismiss, I infer from her allegations that the offenses Isabella allegedly committed are at least similar in seriousness to the offenses that Baker allegedly committed; consequently, CT Transit's disparate treatment of Baker as compared to Isabella is enough to raise "a minimal inference of discriminatory motivation," which is all that is required at this early stage. *Littlejohn*, 795 F.3d at 311. The factual allegations are thus sufficient to survive a motion to dismiss.

## III.   CONCLUSION

For the foregoing reasons, CT Transit's motion to dismiss, ECF No. 41, is GRANTED in part and DENIED in part. The color discrimination claims in Counts One and Two are dismissed. The race discrimination claims in Counts One and Two may proceed.

Count Three of the Amended Complaint asserts a violation of Section 46a-58 of the Connecticut General Statutes. That provision does not create a private right of action but is, instead, enforced by the CHRO. *Morgan v. Semple*, No. 3:16-CV-225, 2020 WL 1974381 *20

(D. Conn. Apr. 24, 2020) (citing cases).  Baker shall therefore show cause within 14 days of this order why that count should not be dismissed.

IT IS SO ORDERED.

/s/

Michael P. Shea, U.S.D.J.

Dated:  Hartford, Connecticut

December 4, 2020